GOVEY HOOD *v.* JOHN H. MARTIN.

A part of the internal improvement lands granted to this State by Act of Congress of September 4, 1841, were located by agents of the State, and for the sale of the unlocated lands an office was created by Act of the Legislature of 1844, the Register and Receiver being authorized to issue warrants for such lands. Under this Act and that of 1847, purchasers of these land warrants become the agents of the State for the location of so much of the internal improvement lands as was indicated by the warrant.

The patent issued, pursuant to the approval of such location, could only issue in favor of the person holding the warrant under which the location was made. It cannot be supposed that the Legislature intended to confer upon the Governor the power to grant a patent to any other person than him to whom the State had sold the warrant.

APPEAL from the District Court of Carroll, *Snyder*, J.

*Selby*, for plaintiff and appellant. *J. B. & C. T. Bemiss*, for defendant.

MERRICK, C. J. Both plaintiff and defendant claim title to the tract of land in controversy in this case by patents issued by the Governor of Louisiana.

The plaintiff's patents are the oldest in date, having issued on the 15th day of December, 1850. The defendant's patents bear date 23rd of December, 1851.

It is contended in this court, that plaintiff's patents were obtained by fraud and contrary to law and that therefore defendant's title ought to prevail against the plaintiff.

The tract of land in controversy has been in cultivation since 1828. In May, 1839, it was sold at probate sale as property belonging to the succession of one *Maulding*, and bought by one *Jones* in partnership with *J. N. P. Richardson*. *Govey Hood* appears to have attested the adjudication as a witness.

*Jones* remained in the possession of the place until his death. The defendant married the widow of *Jones*, and having put further improvements upon

HOOD
v.
MARTIN.

the property, has been in the possession of it ever since. By an Act of Congress approved September 4, 1841, 500,000 acres of land were granted to the State of Louisiana, to be sold at a price not less than one dollar and twenty-five cents per acre, and to be applied to objects of internal improvement, specified in the Act.

A part of these lands were located by agents of the State. In 1844, the Legislature created an office for the sale of the unlocated lands, under the direction of a Register and Receiver. It directed them to sell all of the internal improvement lands belonging to the State of Louisiana, under the same rules and in the same manner as the lands belonging to the United States are sold.

The Register and Receiver were authorized to issue their warrants for lands not yet located. The minimum price was fixed at three dollars per acre.

It was made the duty of the Governor to issue patents for all the lands located by warrants when contemplated to be sold by that Act, " whenever he shall be satisfied that the same have been properly located. Acts 1844, p. 61.

In 1847, another Act of the Legislature was passed, providing for the purchase of the internal improvement lands by pre-emption in certain cases.

The price of the located lands was reduced to one dollar and a quarter per acre, and the price of warrants to locate upon the remaining portion of the land granted by the Act of Congress and which had not been located by the State, was fixed at the same rate.

The seventh section of the Act is in these words. " Be it further enacted, etc., That it shall be the duty of the Governor of the State to issue patents to purchasers on the payment of the purchase money in case of pre-emption or private entry of lands already located and on the approval of the location in the case of the purchase of a land warrant." Acts 1847, p. 47. In 1855 certain sections of the Act of 1847 were re-enacted. Acts, p. 401. It will be seen from those Acts of the Legislature that the purchasers of this class of land warrants became the agents of the State for the location of so much of the lands granted by Congress to the State of Louisiana as was indicated by the warrant.

The course of proceeding seems to have been to locate the lands in the United States Land Office in the District where the same were situated. This location, the warrants being surrendered, was then communicated to the Commissionner of the General Land Office at Washington and by him referred to the Secretary of the Interior for approval. If the Secretary of the Interior approved the location, the Governor was notified of the same and the patent was issued.

The proof in this case establishes clearly that in August, 1850, more than four months previous to the issuing of the patents to the plaintiff, the defendant located the lands in controversy under warrants Nos. 415 and 607. They were embraced in list No. 25.

The approval of the Secretary of the Interior of list No. 25 was communicated to the Governor by the Commissioner of the General Land Office, but without the name of the defendant who had located the land.

By this means, the plaintiff was enabled to obtain a patent for the lands located by the defendant and designated as list No. 25.

This improper use of the location of the defendant's land warrants led to a correspondence between the respective departments, and finally patents were

HOOD
v.
MARTIN.

issued in the name of the defendant, bearing date more than a year subsequent to the plaintiff's patents.

The act of the Governor in issuing the patent was only ministerial. It was to be issued "on the approval of the location, in the case of a land warrant." This we think should be construed to mean that the patent shall issue in favor of the person who held the land warrant under which the location was made. It cannot be supposed that the Legislature intended to confer upon the Governor the power to grant a patent to any other person than him to whom the State had sold the warrant, and who acting on the faith thereof had located the land and procured the approval of such location.

We, therefore, conclude that the patents held by the plaintiff issued unadvisedly, and that they cannot prevail against those held by the defendant. *Stoddard* v. *Chambers*, 2 Howard, 318. *Menard* v. *Massey*, 8 Howard, 309. *Kitridge* v. *Breaud*, 4 Robinson R., 82.

In regard to the first bill of exception, taken by the defendant as to the admission of testimony, we are of the opinion that the allegation " that the patents referred to by the plaintiff, upon which his suit is founded, are null and void and were issued and obtained in fraud and contrary to the laws of the United States and of the State of Louisiana, " authorized the proof of what was done by the officers of the United States and of Louisiana and by the parties in the matter of the issuing of the land warrants, the location of the land, the acts of the respective departments thereon, and the issuing of the patents. We do not discover any testimony in the record, admitted under the above allegation, except on this point. The ruling of the Judge of the lower court has not injured the defendant in this respect.

From the view we have taken of the case, the instructions contained in the second bill of exceptions were immaterial and were they erroneous it would not be necessary to remand the case on that account.

Judgment affirmed.